**Larry GASPAR for himself and all others similarly situated, Plaintiffs,**

v.

**LINVATEC CORPORATION, Bristol–Myers Squibb Company, Bristol–Myers Squibb Company Pension Committee, Bristol–Myers Squibb Company Retirement Income Plan, and Bristol–Myers Squibb Company Severance Plan, Defendants.**

No. 95 C 3574.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 7, 1997.

---

H. Candace Gorman, Law Office of H. Candace Gorman, Chicago, IL, Thomas R. Meites, Paul William Mollica, Meites, Frackman, Mulder & Burger, Chicago, IL, for Plaintiffs.

Thomas G. Hancuch, Edward C. Jepson, Jr., Michael Warren Sculnick, Ann Margaret Schlaffman, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are cross-motions for summary judgment by all defendants and plaintiffs. For the reasons that follow, the court grants defendants' motion for summary judgment, denies plaintiffs' motion for partial summary judgment, and enters judgment in favor of defendants and against plaintiffs in this case.

## I. BACKGROUND [1]

Plaintiff Larry Gaspar ("Gaspar") and the 18 other class plaintiffs worked for Linvatec Corporation ("Linvatec"), a subsidiary of Bristol–Myers Squibb ("Bristol–Myers"). On September 24, 1993, Bristol–Myers announced that it would be closing Linvatec's Chicago facility, where Gaspar had worked since 1979, and several other facilities as part of a corporate downsizing.

Bristol-Myers maintained a severance plan for involuntarily terminated employees. The severance plan excluded from eligibility employees who left the employ of the company voluntarily or because of mandatory or disability-caused retirement. Under the basic severance plan, employees were entitled to four weeks of pay. However, employees who executed general releases, giving up any right to sue defendants based on any acts occurring prior to the employees' signing the releases, would receive up to an additional 52 weeks of supplemental severance pay.

Also on September 24, 1993, Bristol–Myers announced a limited-time offer of special incentives to encourage the voluntary early retirement of eligible employees ("Voluntary Retirement Program," or "VRP"). Eligible employees received a packet of information about the VRP, including a summary plan description that explained the terms of the VRP. The summary plan description stated in bold type: "Severance benefits do not apply if you elect VRP." The cover letter accompanying the packet of VRP information also stated that employees electing VRP benefits were not eligible for severance benefits.

---

**1.** The following facts are taken from the parties' Local Rule 12(M) and 12(N) statements of facts, and are undisputed.

Employees selecting VRP benefits also were required to execute a general release of their rights to sue defendants based on any acts occurring prior to the employees' signing the release.

Gaspar and 18 other employees happened to be eligible for both severance benefits, because they were among the employees at the facilities that Bristol–Myers was closing, and VRP benefits, because they had met the age and length-of-service requirements set forth in the VRP. Bristol–Myers' representatives held meetings with plaintiffs and other Linvatec employees to explain to them their benefits options. At these meetings, plaintiffs were offered a choice between severance benefits and VRP benefits, but not both.

The 18 class plaintiffs other than Gaspar executed releases and selected either supplemental severance or VRP benefits. Gaspar, through his attorney, repeatedly attempted to select both supplemental severance and VRP benefits. On November 12, 1993, Gaspar's counsel wrote Linvatec that Gaspar was electing supplemental severance benefits, but did not enclose an executed release; rather, she asserted that the release violated the Older Workers Benefit Protection Act ("OWBPA") because no additional consideration was given for the release of rights under the Age Discrimination in Employment Act ("ADEA").

On November 15, 1993, Gaspar's attorney again wrote to Linvatec, asserting that Gaspar was entitled to receive benefits under the VRP in addition to supplemental severance benefits. Again, Gaspar's attorney did not include a release executed by Gaspar.

On November 22 and December 1, 1993, Linvatec's counsel wrote to Gaspar's attorney, explaining that Gaspar must sign a release to be awarded supplemental severance benefits, and that Gaspar could not elect both supplemental severance and VRP benefits. On December 14, 1993, counsel for Bristol–Myers wrote Gaspar's attorney, offering Gaspar a final opportunity to elect either supplemental severance or VRP benefits, even though the time for electing VRP benefits had expired.

Gaspar's attorney responded on December 21, 1993, stating that Gaspar was entitled to elect benefits under both plans because neither plan document explicitly precluded an employee from receiving both. Gaspar's attorney also included an executed release under the supplemental severance plan, but asserted in the letter that Gaspar signed the release "under protest and solely because of [Bristol–Myers'] refusal to pay him his money." Gaspar's counsel claimed that the release was invalid because it violated the ADEA and OWBPA, and that Gaspar intended to file a claim against Bristol–Myers. Gaspar did not tender a release under the VRP.

On January 21, 1994, a human resources manager of Linvatec wrote Gaspar, informing him that his claim for both VRP and supplemental severance benefits was being denied. The human resources manager informed Gaspar that his signed release was invalid because it clearly was not voluntary. Because Gaspar's counsel indicated in her letter that the release was not voluntary, Bristol–Myers considered the release ineffective under the terms of the severance plan. Gaspar was paid four weeks of basic severance pay at the time of the plant closing.

Gaspar appealed to the plan administrator from the denial of VRP and supplemental severance benefits. On May 24, 1994, the plan administrator concluded that all of the written materials sent to employees regarding the terms of the VRP and severance plan clearly and unambiguously stated that employees could not select both VRP and severance benefits. She concluded that Gaspar had no right to both VRP and severance benefits, and that he never properly elected benefits under either plan. The plan administrator found that Gaspar had been given numerous opportunities to cure his invalid elections, but had failed to do so. She found that although Gaspar had submitted a signed general release, the accompanying letter negated the effectiveness of the release and the election of supplemental severance benefits because it indicated the execution to be under protest and not voluntary.

Gaspar filed a four-count cause of action in this court against Linvatec, Bristol–Myers,

the retirement and severance plans. and the retirement plan administrator (collectively, "defendants"), alleging that defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001–1461, by denying benefits for which the employees were eligible (Count I), by breaching fiduciary duties (Count II), and by retaliating against Gaspar because of his challenge to defendants' actions (Counts III and IV).

On May 23, 1996, this court certified the first two counts as a class action, with Gaspar and the 18 other employees who were eligible for both VRP and severance benefits as class plaintiffs.

Defendants now move for summary judgment on all counts, and plaintiffs move for partial summary judgment on Counts I and II.

## II. *DISCUSSION*

### A. *Standard for deciding a motion for summary judgment*

A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party presents a *prima facie* showing that it is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Nat'l*

*Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir. 1989).

### B. *Defendants' motion for summary judgment and plaintiffs' motion for partial summary judgment on Counts I and II*

Defendants and plaintiffs argue that they deserve summary judgment in their favor on Counts I and II. In Count I, plaintiffs allege that defendants deprived plaintiffs of benefits due to them under the severance plan and VRP by forcing plaintiffs to elect either severance or VRP benefits, when they were entitled to benefits under both plans. In Count II, plaintiffs allege that defendants breached their fiduciary duties to plaintiffs by telling plaintiffs that they were required to choose between the severance plan and VRP, and by failing to communicate to them the material fact that plaintiffs were not required to make such an election under the terms of the plans.

Defendants contend that the plan administrator acted reasonably in concluding that Gaspar and, by extrapolation, the other plaintiffs were not entitled to benefits under both the VRP and severance plan, because VRP and severance plan documents made clear that this was the case. Plaintiffs counter that the actual VRP and severance plan did not explicitly state that a participant in one plan could not receive benefits under the other plan, and therefore that plaintiffs were entitled to benefits under both plans

### 1. Standard of review of plan administrator's decision

Both parties agree that the retirement and severance plans gave the plan administrator discretionary authority to interpret and construe provisions of the plans, resolve inconsistencies and omissions in the plans, and make benefit determinations under the plans. Therefore, the court reviews the plan administrator's decision under an arbitrary and capricious standard. *See Anderson v. Operative Plasterers & Cement Masons,* 991 F.2d 356, 358 (7th Cir.1993) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989)); *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 688 (7th Cir.1992) (citing *Firestone,* 489 U.S.

at 111, 109 S.Ct. at 954); *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990).

■ If the plan administrator's decision is reasonable, or is not "downright unreasonable," the court will defer to the plan administrator's interpretation of the plan. *Hammond v. Fidelity and Guaranty Life Ins. Co.*, 965 F.2d 428, 429 (7th Cir.1992) (citations omitted); *Fuller,* 905 F.2d at 1058; *Firestone,* 489 U.S. at 117, 109 S.Ct. at 958.

## 2. Terms of VRP and severance plan

■ The crux of the dispute in this case is whether the VRP and severance plan provided that employees could not select benefits under both plans. Defendants argue they did; plaintiffs argue they did not. The plan administrator found that the VRP and severance plan documents clearly and unambiguously informed employees that they could not select both VRP and severance benefits. It is up to this court to decide whether the plan administrator's finding was reasonable or arbitrary and capricious.

The severance plan and summary plan description provide that no severance is payable to employees who leave the employ of Bristol–Myers by, among other things, voluntarily terminating their employment; taking mandatory retirement in accordance with company policy or statutory requirements; or retiring under a Bristol–Myers disability plan. (App. to Pls.' Local Rule 12(M) Statement at 0008, 0311.)

The September 24, 1993, letter from Bristol–Myers to its employees regarding the VRP states that if an employee elects the VRP, he or she is not eligible for severance. (*Id.* at 0220.) The VRP summary plan description states, on page two in bold letters: "Severance benefits do not apply if you elect VRP." (*Id.* at 226.) However, the VRP itself is silent about severance benefits. (*See id.* at 0021–0025.)

Defendants contend that the VRP was completely voluntary, and so an employee selecting the VRP was voluntarily terminating his or her employment. Therefore, the terms of the severance plan clearly exclude an employee taking voluntary early retirement from eligibility for severance benefits.

In addition, defendants argue, the VRP summary plan description makes equally clear that an employee selecting the VRP cannot be eligible for severance benefits. Therefore, according to defendants, the plan administrator reasonably found that plaintiffs were not entitled to both VRP and severance benefits.

Plaintiffs counter that the terms of the VRP and severance plan do not compel an election between the two plans, and therefore that the plan administrator's decision denying Gaspar benefits under both plans was unreasonable.

### a. *Severance plan terms*

Plaintiffs contend that the exclusion in the severance plan for "voluntary termination of employment" was intended to bar employees from quitting their jobs to receive severance pay, and that the plain meaning of "termination" cannot be stretched to cover "retirement." Plaintiffs point out that the section where the "voluntary termination of employment" language appears also excludes employees subject to mandatory retirement and retirement because of disability. Thus, according to plaintiffs, the lack of a specific exclusion for voluntary retirement means that voluntary retirement does not preclude an employee from also receiving severance benefits.

The plan administrator did not directly address how she interpreted the severance plan terms excluding certain employees from eligibility for severance. However, the plan administrator noted that she had reviewed the plan documents for the severance plan and VRP, and that it was clear from these materials that eligible employees would not be able to elect both severance and VRP benefits. (App. to Pls.' Local Rule 12(M) Statement at 0402.) She found that this was Bristol–Myers' intent in offering VRP benefits, and that nothing in the severance plan negated that intent. (*Id.*) Thus, the plan administrator, though not expressly basing her decision on the terms of the severance plan, apparently found that the terms of the severance plan supported her decision.

Rather than finding the plan administrator's decision arbitrary and capricious, the

court finds plaintiffs' suggested interpretation of the severance plan exclusions unreasonable. As defendants point out, voluntary early retirement is, by its very terms, voluntary termination of employment. In contrast, mandatory retirement and retirement because of a disability are not strictly voluntary. Thus, there is nothing unusual or significant about the severance plan's lack of a provision explicitly addressing voluntary retirement, which is already presumably encompassed by the "voluntary termination of employment" provision.

■ Moreover, under federal common law rules of contract interpretation, the court interprets ERISA plans " 'in an ordinary and popular sense as would a person of average intelligence and experience . . . .' " *Wahlin v. Sears, Roebuck & Co.*, 78 F.3d 1232, 1235 (7th Cir.1996) (quoting *Brewer v. Protexall Inc.*, 50 F.3d 453, 457 (7th Cir.1995)). "Voluntary" means "[a]rising from one's own free will" or "[a]cting on one's own initiative." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 1294 (1984). Under this ordinary, popular meaning of "voluntary," the court does not see how an employee's choosing to retire under the VRP can be anything but voluntary. Because the severance plan clearly excludes from eligibility an employee who leaves the company voluntarily, an employee who chooses benefits under the VRP is excluded from receiving benefits under the severance plan.

#### b. *VRP terms*

Plaintiffs also argue that although the VRP summary plan description states that an employee electing VRP benefits cannot also elect severance benefits, the VRP itself says nothing about an employee not being eligible for both severance and VRP benefits. Plaintiffs contend that where a summary plan description favors an employer and the plan favors the employee, the official plan controls.

The flaw in plaintiffs' argument is that the cases from which they cull their proposition involve actual conflicts between a plan and the plan's summary plan description. *See Sturges v. Hy–Vee Employee Benefit Plan and Trust*, 991 F.2d 479, 480–81 (8th Cir.

1993); *Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 541–43 (4th Cir.1992); *Shell v. Amalgamated Cotton Garment and Allied Indus. Fund*, 871 F.Supp. 1173, 1179 n. 9 (D.Minn.), aff'd, 43 F.3d 364 (8th Cir.1994); *Sanders v. Scheideler*, 816 F.Supp. 1338, 1344 (W.D.Wis. 1993), aff'd, 25 F.3d 1053, 1994 WL 234497 (7th Cir.1994); *Springs Valley, Bank & Trust Co. v. Carpenter*, 885 F.Supp. 1131, 1141–42 (S.D.Ind.1993).

In these types of cases, the courts have held that the plan language controls, particularly where the summary plan description contains a provision explicitly stating that the plan language takes precedence over summary plan description language in the event of a conflict between the two, and where the plan is more favorable to the employee than the summary plan description. *See Sturges*, 991 F.2d at 480–81; *Glocker*, 974 F.2d at 542; *Shell*, 871 F.Supp. at 1179 n. 9; *Sanders*, 816 F.Supp. at 1344. *Cf. Springs Valley Bank & Trust*, 885 F.Supp. at 1142 (stating that when terms of a summary plan description and policy conflict, the terms that favor the participant will govern, regardless of disclaimers).

In the present case, however, the VRP is silent about its relationship with the severance plan. In contrast, the VRP summary plan description explains that an employee cannot receive both VRP and severance benefits. Thus, no conflict exists between the summary plan description and the VRP itself. In this case, the summary plan description can "be used to fill an interpretive gap," particularly considering that the court is "reviewing the [plan administrator's] interpretation under a deferential standard." *Fuller*, 905 F.2d at 1060. *See also Shapiro v. Joint Indus. Board of Elec. Indus.*, 858 F.Supp. 356, 360–61 (E.D.N.Y.1994) (where plan itself is not clear as to scope of benefits, but summary plan description unambiguously sets forth exclusion, plan administrator's decision to deny coverage to plan participant based on summary plan description exclusion was not arbitrary or capricious).

The court finds that, considering all of the severance plan and VRP documents together, the plan administrator's decision that an em-

ployee could not select benefits under both the severance plan and VRP, but was entitled to select benefits under only one of the plans, was not unreasonable, arbitrary, or capricious. Therefore, the court will not disturb the plan administrator's decision.

Since the court finds that the plan administrator's decision that employees were entitled to benefits under either the VRP or the severance plan, but not both, was reasonable, it also finds that defendants did not deny benefits to which plaintiffs were entitled or breach their fiduciary duties to plaintiffs by misrepresenting the terms of the VRP and severance plan.

Accordingly, the court grants defendants' motion for summary judgment on Counts I and II, and denies plaintiffs' motion for summary judgment on Counts I and II.

### C. Defendants' motion for summary judgment on Counts III and IV

Defendants also contend that they deserve judgment on Counts III and IV, which allege claims on behalf of Gaspar alone.

### 1. Count III

■ In Count III, Gaspar alleges that defendants violated ERISA section 510, 29 U.S.C. § 1140, by failing to pay Gaspar benefits to which he was entitled in retaliation for Gaspar's challenge to defendants' practice of requiring an election between severance and VRP benefits. Specifically, Gaspar alleges that defendants denied him both supplemental severance and VRP benefits, even though he was entitled to benefits under at least one, if not both, of the plans; and that defendants delayed processing his medical benefits election form under the retirement plan, resulting in Gaspar's having to pay higher rates while receiving less generous benefits.

Defendants argue that section 510 applies only to actions that adversely affect the employment relationship, and not to a mere denial of benefits. Defendants contend that because Gaspar has not alleged and cannot allege that defendants took an adverse employment action in retaliation for Gaspar's challenge to defendants' requiring an election

between severance and VRP benefits, Gaspar has no claim under section 510.

■ Section 510 makes it unlawful for an employer

"to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...."

*Teumer v. General Motors Corp.,* 34 F.3d 542. 544 (7th Cir.1994) (quoting 29 U.S.C. § 1140). Thus, section 510 "protects *employment relationships* from disruptions designed to frustrate the vesting of benefit plan rights or the continued enjoyment of rights already vested but yet to be partaken." *Teumer,* 34 F.3d at 544 (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142–44, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990); *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1243 (7th Cir.1983)) (emphasis added).

■ However, section 510 "does not protect employees against all employer actions undertaken with an eye toward thwarting the attainment of benefits; only changes in one's *employment status* cannot stem from benefit-based motivations." *Teumer,* 34 F.3d at 545 (citing *McGath v. Auto–Body North Shore, Inc.,* 7 F.3d 665, 668–69 (7th Cir.1993); *Deeming v. American Standard, Inc.,* 905 F.2d 1124, 1127 (7th Cir.1990)) (emphasis in original).

For example, even if an employer, in bad faith, amends the terms of a plan specifically to avoid paying benefits to an employee, such action is not prohibited under section 510 because it is not "an action taken against the employment situation itself." *Teumer,* 34 F.3d at 545 (citing *McGath,* 7 F.3d at 667–69). In such a case, or in any case where an employee is wrongfully deprived of benefits for any reason. the employee has a remedy under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *Teumer,* 34 F.3d at 545.

In the present case, the only actions that defendants took that affected Gaspar's employment situation were Bristol–Myers' decisions to close the Linvatec plant at which

Gaspar worked and, at the same time, to allow certain employees to take early retirement with enhanced benefits under the VRP. Bristol–Myers announced both of these decisions before Gaspar challenged defendants' requirement that employees elect either severance or enhanced retirement benefits.

Thus, Bristol–Myers did not take the actions that affected Gaspar's employment status to retaliate for Gaspar's objection to defendants' election requirement, since the actions preceded Gaspar's objection. Similarly, defendants' subsequent denial of or delay in processing benefits to Gaspar was simply that—a denial of or delay in processing benefits not accompanied by an adverse employment decision.

Accordingly, Gaspar has no claim under ERISA section 510, and the court grants defendants' motion for summary judgment on Count III.

### 2. Count IV

In Count IV, which is against only Bristol–Myers and Linvatec, Gaspar alleges that those defendants violated the ADEA, 29 U.S.C. § 623(d), by retaliating against Gaspar for opposing defendants' practice of seeking general releases from terminated employees under the supplemental severance plan. The specific acts of retaliation by defendants are the same as those alleged in Count III.

Defendants contend that to maintain a claim of retaliation under the ADEA, Gaspar must show, among other things, a causal connection between his assertion of ADEA rights and the denial of benefits. Defendants argue that Gaspar cannot do so, and therefore has no claim of ADEA retaliation.

■ The ADEA prohibits an employer from discriminating against an employee opposing an unlawful employment practice. *Brenner v. Brown,* 36 F.3d 18, 19 (7th Cir. 1994) (citing *Rennie v. Dalton,* 3 F.3d 1100, 1106 (7th Cir.1993), *cert. denied,* 510 U.S. 1111, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994); *Jennings v. Tinley Park Community Consol. School Dist. No. 146,* 864 F.2d 1368, 1371–72 (7th Cir.1988)). To establish a *prima facie* case of retaliation, a plaintiff must show that

he engaged in statutorily protected activity; he suffered an adverse action by his employer; and a causal connection existed between the protected activity and the adverse action. *Brenner,* 36 F.3d at 19 (citing *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 321 (7th Cir.1992)).

■ Defendants contend that no causal connection existed between Gaspar's assertion of his ADEA rights and defendants' denial of both VRP and severance benefits because Bristol–Myers announced that employees were not entitled to benefits under both the VRP and severance plan before Gaspar filed his ADEA claim. The court agrees. Therefore, defendants did not deny both severance and VRP benefits to Gaspar to retaliate for Gaspar's filing his ADEA claim.

■ However, defendants' alleged denial of supplemental severance benefits to Gaspar and delay in processing Gaspar's medical benefits election form under the retirement plan occurred after Gaspar protested the general release requirement. Consequently, Gaspar has established a *prima facie* case of retaliation under the ADEA based on these actions by defendants. *See Dey v. Colt Constr. & Devel. Co.,* 28 F.3d 1446, 1458 (7th Cir.1994) (plaintiff may establish a causal link between protected activity and adverse action through evidence that the adverse action "took place on the heels of" the protected activity). Thus, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for their actions. *See Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1313 (7th Cir.1989). If defendants meet this burden, the burden shifts back to Gaspar to show that the articulated reason is a pretext for retaliation. *See id.*

■ The plan administrator denied supplemental severance benefits to Gaspar because she found that Gaspar did not execute a valid general release, which was required for supplemental severance benefits. (Attachment to Defs.' Statement of Undisputed Material Facts Pursuant to General Rule 12(M) Ex. K at G0114.) Gaspar's counsel had sent Bristol–Myers a general release executed by Gaspar, but also included a let-

ter stating that Gaspar had signed the release "under protest and solely because of [Bristol–Myers'] refusal to pay him his money;" that the release was invalid because it violated the ADEA and OWBPA; and that Gaspar intended to file a claim against Bristol–Myers. (*Id.* Ex. I at G0014–15.)

The plan administrator found that although Gaspar eventually submitted a general release under the severance plan, the accompanying letter negated the effectiveness of the release and the election of supplemental severance benefits because it indicated the execution to be under protest and not voluntary. (*Id.* Ex. K at G0114.)

Defendants have presented evidence that the plan administrator denied Gaspar supplemental severance benefits because Gaspar failed to execute a valid general release. The court notes that a release is valid only if it is voluntary, *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 570–72 (7th Cir.1995), and the plan administrator reasonably found that Gaspar's release, submitted "under protest and solely because of [Bristol–Myers'] refusal to pay him his money," was not valid. Therefore, defendants have articulated a legitimate and nondiscriminatory reason for the denial of supplemental severance benefits. Gaspar, in contrast, has not demonstrated that defendants' articulated reason for denying him supplemental severance benefits is a pretext for discrimination. *See Dey,* 28 F.3d at 1457. In fact, Gaspar has presented no evidence. either circumstantial or direct, indicating that defendants' explanation for their action in denying supplemental severance benefits is false. *See Holland,* 883 F.2d at 1313 (plaintiff demonstrates pretext by using circumstantial evidence to show that employer's articulated explanation is false).

Accordingly, the court finds that no question of fact exists regarding whether there was a causal connection between Gaspar's filing his ADEA claim and defendants' denial of supplemental severance benefits to Gaspar; there was no such connection.

▇ Similarly, Gaspar has failed to show that defendants' delay in processing Gaspar's medical benefits election form under the retirement plan was in retaliation for Gaspar's ADEA claim. Aside from his and his attorney's allegations, Gaspar has presented no evidence that retaliation was defendants' motive in not immediately processing his retiree medical benefits election form. (*See, e.g.,* Pls.' Resp. to Defs.' Rule 12(M) Statement ¶¶ 29–31; Pls.' Statement of Uncontested Facts Pursuant to Rule 12(N) ¶¶ 6–7, 10; App. to Pls.' Local Rule 12(M) Statement at 420–30).

Defendants, on the other hand, have presented substantial evidence that any delay in the processing of Gaspar's retiree medical benefits election form was largely due to Gaspar's counsel's erroneous insistence that Gaspar was entitled to retire as of December 1, 1993, rather than January 1, 1994, as defendants had maintained.

From February 1994, when Gaspar decided to elect early retirement, through April 1994, Gaspar's counsel insisted that Gaspar was entitled to retire as of December 1, 1993, because he ceased working in November 1993. (*See* Pls.' Statement of Facts Pursuant to Rule 12(N) ¶¶ 6, 7, 10.) However, counsel for Bristol–Myers twice told Gaspar's counsel that Gaspar only could retire as of January 1, 1994, because his employment was not terminated until December 31, 1993. (*See* Defs.' Resp. to Pls.' Statement of Facts Pursuant to Rule 12(N) Ex. at BMS885; G0122.) *See also* Rev. Rul. 56–693, 1956–2 C.B. 282, as modified by Rev. Rul. 60–323, 1960–2 C.B. 148:26 C.F.R. § 1.401–1(b)(1)(I) (no retirement payments may be made to an employee under the age of 65 prior to his severance from employment).

In early May 1994, when Gaspar finally chose to take early retirement as of January 1, 1994, Bristol–Myers immediately began processing his early retirement election and sought more information from Gaspar and his wife to complete the election. (*See* Defs.' Resp. to Pls.' Statement of Facts Pursuant to Rule 12(N) Ex. at G0115; BMS893.) At that time, Bristol–Myers also began processing Gaspar's medical claims, since Gaspar finally had made an effective early retirement election. (*See id.* Ex. at G0115.) It appears that Gaspar and his wife eventually received all of the pension and medical benefits to

which they were entitled in accordance with Gaspar's January 1, 1994, early retirement date, including benefits for the period during which Gaspar was contesting the date on which he was eligible to retire. (*See* Defs.' Statement of Undisputed Material Facts Pursuant to General Rule 12(M) ¶¶ 32, 33; Ex. 8 at G0180–83.)

Defendants have articulated and supported with evidence a legitimate and nondiscriminatory reason for the delay in the processing of Gaspar's retirement election and retiree medical benefits election form. To survive defendants' motion for summary judgment, then, Gaspar had the burden to produce evidence from which a rational trier of fact could infer that defendants' proffered reason for their actions was pretextual. *See Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994). As with the supplemental severance benefits claim, Gaspar has presented no evidence, either circumstantial or direct, indicating that defendants' explanation for their action in not immediately processing Gaspar's retirement request or medical benefits election form is false. Therefore, Gaspar has not demonstrated that defendants' explanation is a pretext for retaliation. *See id.; Dey,* 28 F.3d at 1457; *Holland,* 883 F.2d at 1313.

Accordingly, the court finds that no question of fact exists regarding whether there was a causal connection between Gaspar's filing his ADEA claim and any delay in defendants' processing of Gaspar's early retirement request or retiree medical benefits election form; there was no such connection.

Consequently, Gaspar has not presented sufficient evidence to withstand defendants' motion for summary judgment on Count IV, and the court grants defendants' motion.

### III. *CONCLUSION*

For the foregoing reasons, the court grants defendants' motion for summary judgment and denies plaintiffs' motion for partial summary judgment. The court enters judgment in favor of defendants on Counts I, II, III, and IV.