Alma NINAUS, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Badger Mutual Insurance Company, American Family
Mutual Insurance Company and Acro Automation
Systems, Inc., Defendants,

Julie RADISH, Defendant-Third-Party Plaintiff-
Respondent,

v.

WAL-MART STORES, INC., Associates Health & Welfare
Plan, Third-Party Defendant-Appellant.

Court of Appeals

*No. 97–0191. Oral argument June 15, 1998.—Decided July
14, 1998.*

(Also reported in 584 N.W.2d 545.)

869

On behalf of the third party defendant-appellant, the cause was submitted on the briefs of *Richard P. Carr* and *Colleen D. Ball* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, of Milwaukee. There was oral argument by *Colleen Ball*.

On behalf of the defendant-third party plaintiff-respondent, the cause was submitted on the brief of *Edward E. Robinson*, of *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, of Milwaukee. There was oral argument by *Edward E. Robinson*.

Before Wedemeyer, P.J., Schudson and Myse, JJ.

SCHUDSON, J. Wal-Mart Stores, Inc., Associates Health & Welfare Plan (Wal-Mart) appeals from the judgment determining its subrogation rights with respect to medical payments made on behalf of Julie Radish. Wal-Mart argues that the trial court erred in concluding: (1) that it was not entitled to subrogated recovery of its payments for Radish's 1994 medical costs; and (2) that the subrogated amount it was entitled to recover for Radish's 1995 medical costs was subject to a one-third reduction for part of Radish's attorneys' fees. We affirm.

## I. BACKGROUND

In 1994, Radish, a Wal-Mart employee, and Alma Ninaus were seriously injured when the car in which they were passengers was involved in a head-on collision. Wal-Mart's self-funded Health & Welfare Plan (Plan) covered some of Radish's medical costs, paying approximately $56,568 in 1994, $16,402 in 1995, and $28,180 in 1996.

Ninaus brought the action underlying this appeal against various insurers, and also against Radish regarding the allocation of limited insurance proceeds between them. Pursuant to § 803.03, STATS., Radish named Wal-Mart as a third-party defendant, seeking to extinguish Wal-Mart's subrogation lien. By the time Wal-Mart was joined and made its first appearance in

the action, the insurers had agreed to contribute their policy limits to a settlement fund for Radish and, except for $15,000, the settlement amounts had been determined and the agreement completed. Ultimately, Radish received a settlement of approximately $261,906 but, the parties agree, that amount did not cover her full medical costs; that is, she was not "made whole."

To determine their respective rights and obligations, Radish and Wal-Mart filed cross-motions for summary judgment. Wal-Mart maintained that Radish's recovery should first pay off its subrogation lien. Radish countered that the lien should be extinguished because she had not been "made whole" by the settlement or, at the very least, that the pay-off should be reduced by one-third as an offset against her attorneys' fees.

Throughout the three years of medical payments, Wal-Mart's Plan was a self-insured program governed by the Employee Retirement Income Security Act of 1974 (ERISA). The terms of the Plan, however, changed each year and, as a result, the trial court rendered a different ruling on each of Wal-Mart's subrogation claims. For 1996, the trial court concluded that Wal-Mart was entitled to full subrogation. For 1995, the trial court also concluded that Wal-Mart was entitled to full subrogation, but reduced the pay-off by one-third for attorneys' fees.[2] For 1994, however, the

---

[2] Radish protests the annual alteration of Wal-Mart's Plan but does not challenge the trial court rulings for 1995 and 1996. She writes:

> It is patently unfair to allow an insured such as Wal-Mart to change its obligations and rights once the medical condition giving rise to the medical treatment has occurred. It is also unfair for Wal-Mart to be entitled to full reimbursement for 1996 medical

trial court concluded that because Radish had not been "made whole" by the settlement, and because the terms of Wal-Mart's 1994 Summary Plan Description (SPD) precluded subrogation unless the insured had been "made whole," and because the SPD terms prevailed over the terms of Wal-Mart's actual Plan, Wal-Mart was not entitled to recover any of its 1994 payments.

Accordingly, Radish paid Wal-Mart more than $39,000 for medical expenses that Wal-Mart had covered: the full amount Wal-Mart had paid in 1996, and two-thirds of the amount Wal-Mart had paid in 1995. On appeal, Wal-Mart challenges the denial of recovery of: the $56,568 it paid for 1994; and $16,402, one-third of the amount it paid for 1995.

## II. STANDARDS OF REVIEW

Summary judgment methodology is well known and need not be repeated here. *See* § 802.08, STATS. Our review of a grant or denial of summary judgment is *de novo. See M & I First Nat'l Bank v. Episcopal Homes Mgmt.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995).

Generally, under Wisconsin law, an insurer who pays health benefits on behalf of an insured is not entitled to subrogation unless the insured has been fully

expenses, since Julie Radish has been required to pay all of the premiums for that year. Both inequities, however, appear to be allowed under ERISA.

She acknowledges that the 1995 and 1996 summary plan descriptions (SPD) "contain much broader subrogation/reimbursement provisions [than the 1994 SPD]. Accordingly, there is no issue as to whether the Plan has the right to subrogation/reimbursement for medical expenses incurred" for those years.

compensated—i.e., "made whole" for his or her injuries. *See Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 272, 316 N.W.2d 348, 353 (1982). As we have recognized, however, "[s]ubrogation provisions of self-funded ERISA plans trump state subrogation rules." *Newport News Shipbuilding Co. v. T.H.E. Ins. Co.*, 187 Wis. 2d 364, 371, 523 N.W.2d 270, 272 (Ct. App. 1994) (citation omitted).

While the federal act preempts state subrogation law, it does not delineate subrogation rights. Thus, ordinarily, to determine subrogation rights, we would consider the specific terms of the plan at issue. *See Sanders v. Scheideler*, 816 F. Supp. 1338, 1344 (W.D. Wis. 1993). Where, however, a plan does not establish subrogation rights, or does not authorize the administrator to construe the plan to establish those rights, or where, as we conclude here, the administrator's construction is not reached because of the preclusive effect of the SPD, we "default" to the federal common law that, in turn, applies the "make whole doctrine" of Wisconsin's subrogation rule. *See Schultz v. NEPCO Employees Mut. Benefit Ass'n*, 190 Wis. 2d 742, 751, 528 N.W.2d 441, 445 (Ct. App. 1994).[3]

---

[3] Thus, we reject Wal-Mart's argument that we must apply a deferential standard of review in favor of its administrator's interpretation of the Plan. Although that would be so under other circumstances, *see Sanders v. Scheideler*, 816 F. Supp. 1338, 1342 (W.D. Wis. 1993), the Plan in this case does not provide for the administrator's interpretation of the SPD.

Wal-Mart's Plan provides for the administrator's discretionary authority to construe the Plan, not the SPD. While Wal-Mart offers what at first seems to be a plausible argument–that the administrator's authority necessarily extends to the SPD–careful analysis reveals the fallacy of Wal-Mart's theory.

## III. THE 1994 RECOVERY

Wal-Mart argues that under Wal-Mart's 1994 Plan, subrogation recovery would be required. The trial court concluded, however, that for 1994, Wal-Mart's and Radish's rights had to be determined not by Wal-Mart's *Plan*, but rather, by its *Summary Plan Description*, and that the SPD precluded subrogation. Essentially, the trial court reasoned that the terms of the 1994 SPD conflicted with the terms of the 1994 Plan and, because the SPD's subrogation terms effectively precluded Wal-Mart's recovery of Radish's settlement proceeds, the SPD was more favorable to Radish and, therefore, must prevail. As explained in *Springs Valley Bank & Trust Co. v. Carpenter*, 885 F. Supp. 1131 (S.D. Ind. 1993), the case on which the trial court primarily relied, "when terms of an S.P.D. and policy conflict, the terms which favor the participant will govern." *Id.* at 1142.

Wal-Mart points out, however, that the SPD booklet provided to Radish and all Wal-Mart employees stated that it was only "a summary" and that the actual health program provisions were "set forth in legal documents, including an official plan text and trust agreement." The SPD clarified that "[s]hould any questions ever arise about the nature and extent of your benefits, the formal language of the Plan document, not

---

After all, as we will explain in this opinion, Radish was entitled to rely on the SPD without any concern that its terms might differ from those of the Plan. Lest her reliance be illusory, it was necessarily insulated against an administrator's interpretation that would alter the rights the SPD provided. Accordingly, we do not defer to the administrator's interpretation of the Plan and, therefore, we review *de novo* the terms of the SPD. *See id.* (absent administrator's discretionary authority to interpret plan, court reviews terms of plan *de novo*).

the informal wording of this booklet, will govern." Moreover, the SPD also stated that the Plan's Administrative Committee had "discretionary authority to resolve all questions concerning the administration, interpretation, or application of the Plan" and, according to the undisputed affidavit of its chairman, the committee had consistently referred to the Plan, not the SPD, in determining subrogation rights, and had interpreted the Plan as establishing Wal-Mart's "right to first priority from settlement proceeds."

Thus, while Wal-Mart insists that the 1994 SPD and Plan were not in conflict, it also argues that even if they were, the trial court should have deferred to the committee's interpretation, which provided for Wal-Mart's first priority for recovery of the settlement proceeds. Further, Wal-Mart argues that the trial court never identified any conflict between the 1994 SPD and Plan but, instead, suggested that the SPD subrogation clause was "silent as to priority." Therefore, Wal-Mart contends, the Plan prevails because, under *Gaspar v. Linvatec Corp.*, 952 F. Supp. 1274, 1280 (N.D. Ill. 1997), where one document is silent and the other is clear, no "conflict" exists and the clear document defines the rights.

Indeed, Wal-Mart maintains that *Gaspar* is additionally significant because it explicitly distinguishes *Carpenter*. In *Gaspar*, the court explained:

> The flaw in plaintiffs' argument is that the cases from which they cull their proposition involve actual conflicts between a plan and the plan's summary plan description. [citing cases, including *Carpenter*]
>
> . . . .
>
> In the present case, however, the [plan] is silent about its relationship with the severance plan. In

877

contrast, the . . . summary plan description explains that an employee cannot receive both [plan] and severance benefits. Thus, no conflict exists between the summary plan description and the [plan] itself.

*Gaspar*, 952 F. Supp. at 1280 (citations omitted). Thus, Wal-Mart concludes:

> There is likewise no conflict here. The 1994 SPD and the 1994 Plan Document are not at odds. The SPD says that the Plan may "recover benefits previously paid" from "any judgment [or] settlement"—if there is such a proceeding in which "medical expenses may be payable." (Note that the SPD uses "payable" not "paid"; there simply must be a proceeding in which (a) medical expenses are available and (b) the Plan or participant are eligible to recover.) The Plan Document elaborates with its "including, but not limited to" language and states that the Plan may recover "regardless of whether [and how] the payment is designated." There is no conflict–simply a more detailed explanation in the Plan Document.

(Footnote omitted.) Moreover, Wal-Mart explains, the fact that the Plan provides somewhat different and more elaborate wording does not mean that a conflict exists between the Plan and the SPD. As Wal-Mart notes, the Seventh Circuit Court of Appeals recently observed:

> Although a summary plan description should include matters that affect coverage, and prevails over the plan itself in the event of a conflict, no document can include every detail and remain a summary. . . . Larding the summary with minutiae would defeat that document's function: to provide a capsule guide in simple language for employees.

*Herrmann v. Cencom Cable Assocs.*, 978 F.2d 978, 983–84 (7th Cir. 1992) (citations omitted).

We have no disagreement with the legal principles on which Wal-Mart relies. Indeed, Radish acknowledges their validity and concedes that if the 1994 SPD provided for the subrogation recovery Wal-Mart claims, or if the 1994 SPD were silent on the subject and the Plan provided for recovery, then Wal-Mart should have prevailed. Radish correctly argues, however, that Wal-Mart's theory rests on a twisted reading of the SPD.

Wal-Mart maintains that the SPD "indicates that the Plan should recover all *'benefits previously paid'* from *'[a]ny* settlement . . . payment." The 1994 SPD language, however, states:

> The Plan has a right . . . to recover benefits previously paid by the Plan *to the extent that medical benefits may be payable* in any of the following.
>
> • Any judgment, settlement, or any payment, made or to be made by a person considered responsible for the condition giving rise to the medical expense or by their insurers.

(Emphasis added.) The Plan, in clear contrast, does not limit recovery to "medical expenses," but rather, provides for recovery of "any payment . . . regardless of whether the payment is designated as payment for . . . medical benefits or any other specified damages." Thus, if the Plan governed, then Wal-Mart could recover from the settlement "regardless" of whether the settlement proceeds were pegged to "medical benefits or any other specified damages." If, however, the SPD governed, then Wal-Mart could not recover

because the settlement proceeds were not specifically pegged—i.e., they were not necessarily for "medical expenses," but rather, were in a lump sum without allocation among the various items of damages.

Wal-Mart fails to explain how the SPD language establishes its right to recovery of settlement proceeds under circumstances in which a lump sum settlement does *not* delineate "the extent that medical benefits may be payable." Further, as Radish notes, the SPD does not set forth any allocation rules that somehow could compensate for the settlement's failure to make that delineation.

Finally, we note, although arguments in the alternative often are compatible, Wal-Mart's contrasting arguments almost seem to invite the inevitable conclusion that the SPD precludes subrogation. After all, Wal-Mart first argues that the 1994 SPD *explicitly provides for the subrogation* it seeks. Wal-Mart next argues that the 1994 SPD *may be ambiguous*, but it refers employees to the Plan to resolve any doubts. Last, Wal-Mart maintains that if the 1994 SPD *does not address subrogation* it is silent on the subject and, therefore, falls under the *Gaspar* rule requiring reference to the Plan. Under the circumstances, Wal-Mart seems to be conceding, at the very least, that the SPD's terms were uncertain. Thus, we conclude that here, consistent with well-settled principles of insurance contract construction, such uncertainty must be resolved in favor of the insured. *See Smith v. State Farm Fire & Cas. Co.*, 192 Wis. 2d 322, 329, 531 N.W.2d 376, 379 (Ct. App. 1995).

Accordingly, we conclude that because the 1994 SPD limits subrogation to "the extent that medical benefits may be payable," and because the settlement did not delineate the extent to which its payments were for

medical benefits, the SPD does not provide for the sub-rogation Wal-Mart seeks.

■

Nevertheless, Wal-Mart would have us look to the 1994 Plan and its broader subrogation provision. After all, Wal-Mart argues, what could be more clear? The 1994 SPD explicitly warned Wal-Mart employees that "[s]hould any questions ever arise about the nature and extent of your benefits, the formal language of the Plan document, not the informal wording of this booklet, will govern." As reasonable as Wal-Mart's argument seems, however, it cannot overcome consistent federal authority holding that where the terms of a summary and plan conflict, and where the summary is more favorable to the employee, the summary controls, *even when it contains a disclaimer to the contrary*. In *Carpenter*, for example, the court declared:

> The majority of cases recognize that for E.R.I.S.A.'s requirement of accurate and comprehensive S.P.D.s to have any effect at all, participants must be entitled to rely on an S.D.P.'s [sic] terms over a plan policy in the event of a conflict between the two. . . . Under this view, disclaimers are ineffective to defeat participants' reliance on the terms of a S.P.D.[.]
>
> . . . .
>
> We hold that when terms of an S.P.D. and policy conflict, the terms which favor the participant will govern, regardless of disclaimers (read or unread) or detrimental reliance.

*Carpenter*, 885 F. Supp. at 1139–42.[4]

---

[4] In a footnote, Wal-Mart also argued that "even if there were a conflict in Plan documents, Ms. Radish would have to prove that she detrimentally relied upon the SPD and was

The *Carpenter* reasoning is compelling. It flows logically from 29 U.S.C. § 1022 requiring ERISA plans to provide a summary plan description "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Thus, under these circumstances, we need not address Wal-Mart's additional arguments about the committee's authority to resolve any questions that may arise regarding the Plan. Concluding that the *Carpenter* analysis is sound and fully applicable to the instant case, our analysis stops at the SPD. Focusing, therefore, on the 1994 SPD, we next consider whether the trial court correctly denied subrogation to Wal-Mart because Radish had not been "made whole" by the settlement. We conclude that the trial court was correct.

In *Sanders*, the court also was evaluating subrogation rights to lump sum settlement proceeds, under an ERISA plan that, like Wal-Mart's 1994 SPD, limited recovery to the medical expense portion of a settlement. *See Sanders*, 816 F. Supp. 1344–47. Invoking Wisconsin's "make-whole" doctrine as a federal common law default priority rule, the court declared:

> The absence of a priority clause in the subrogation provision precludes a ready determination of the parties' rights to the proceeds. . . .
> . . . .
> An alternative default priority rule exists in Wisconsin's common law "make-whole" doctrine, which provides that an insurer cannot assert a sub-

---

prejudiced by doing so." We note, however, that the authorities on which Wal-Mart relies pre-date *Springs Valley Bank & Trust Co. v. Carpenter*, 885 F. Supp. 1131 (S.D. Ind. 1993), and its declaration that the more favorable SPD prevails "regardless of . . . detrimental reliance." *Carpenter*, 885 F. Supp. at 1142.

rogation right until the insured is fully compensated for his or her injuries. . . .

It is well established that state subrogation doctrines are preempted under ERISA. . . . In this case, however, application of the make-whole doctrine would not supplant or dictate the terms of the plan. The doctrine would serve strictly as a default rule to be applied only when a plan fails to designate priority rules or provide its fiduciaries the discretion necessary to construe the plan accordingly. . . . Adoption of the make-whole doctrine as a default priority rule appears consistent with the congressional mandate to fashion federal common law to facilitate the ERISA scheme.

*Id.* at 1345–47 (citations omitted); *see also Schultz v. NEPCO Employees Mut. Benefit Ass'n*, 190 Wis. 2d 742, 751–52, 528 N.W.2d 441, 445 (Ct. App. 1994) (adopting the default/make whole principle of *Sanders*).

██

Here, as in *Sanders* and *Schultz*, the lump sum settlement did not allocate the proceeds among the different damages. As in *Sanders* and *Schultz*, to the extent that Wal-Mart's subrogation lien applied at all under the 1994 SPD, it applied only to medical expenses for which, it is undisputed, Radish has not been made whole. Thus, we conclude, the trial court correctly granted summary judgment to Radish, denying Wal-Mart's subrogation claim for 1994.

## IV. THE 1995 RECOVERY: ATTORNEYS' FEES

In the trial court, Radish contended that her attorneys represented Wal-Mart's interests in reaching the settlement and that, therefore, under federal law, Wal-Mart's 1995 subrogation recovery should be reduced by

one-third.[5] The trial court agreed, relying on *Serembus v. Mathwig*, 817 F. Supp. 1414 (E.D. Wis. 1992), in which the court, granting the request for a one-third attorneys' fee reduction of the subrogation recovery, explained:

> Generally, under the American Rule, a person bears the expenses of his own case. However, in this case, the defendant's settlement benefits the Fund. Had defendant not engaged an attorney and pursued her claims in state court, the Fund would not have recovered any of the benefits paid concerning defendant's injuries. Since the Fund benefits from defendant's pursuit of her claims, a one-third reduction of the Fund's subrogation amount of the settlement fairly apportions the attorney's fees.

*Id.*, at 1423 (citation omitted); *see also Dugan v. Nickla*, 763 F. Supp. 981 (N.D. Ill. 1991); *Cutting v. Jerome Foods*, 820 F. Supp. 1146 (W.D. Wis. 1991).

Contending that *Serembus* is distinguishable, Wal-Mart argues:

> In [*Serembus*], a plan participant filed a lawsuit against a third-party tortfeasor. When the lawsuit settled, the plan filed a separate action against the participant for reimbursement from settlement proceeds of the amounts the plan had paid to the participant. The *Serembus* court allowed reimbursement but required the plan to pay attorneys' fees to the participant because the plan had benefited from the lawsuit without taking part in it. That is not the situation in this case.

---

[5] Radish makes no comparable claim for the 1996 recovery, noting that the 1996 SPD, unlike the 1994 and 1995 SPDs, provides that there shall be no offset for the insured's attorneys' fees in procuring a settlement or award.

Here, Ms. Radish sued the Plan, joining it as a formal, necessary party to the lawsuit pursuant to Wis. Stat. § 803.03(2)(a) because of its subrogation interest. The Plan participated vigorously in proceedings and briefing below, seeking to clarify its subrogation rights from the time of joinder. Indeed, the issue of allocation of settlement proceeds was the only issue in the case while the Plan was a party. These facts remove the case from the domain of *Serembus*.

We disagree. Wal-Mart's argument misses the mark—indeed, it seems aimed at the wrong target. The issue is not whether Wal-Mart was actively involved in representing its own interests in Radish's third-party action to extinguish the subrogation lien. Of course it was; its interests were adverse to hers. The issue is whether Wal-Mart did anything to represent its interests in the course of Radish's legal efforts to reach a settlement—a settlement that, ultimately, provided money for Wal-Mart.

Clearly, as in *Serembus*, Wal-Mart did nothing, but ultimately benefited from the efforts of Radish's attorneys. As the trial court commented:

> [T]he attorney fees that Wal-Mart [was] incurring [were] not to create the res but rather to protect [its] subrogation rights. That's two different animals.
>
> . . . [T]here was no participation, in effect, by Wal-Mart in having the amount that was eventually recovered by [Radish's attorneys] . . . .
>
> It was only after that money came in[,] or the bulk of it[,] . . . when Wal-Mart comes in to incur attorney fees . . . to protect subrogation rights. Not to create money. That's a different ball game . . . .

Wal-Mart does not dispute Radish's argument that "through the sole efforts of [her] attorneys, $261,960.21 has been recovered," a substantial portion of which she ultimately paid Wal-Mart. Consequently, the distinction Wal-Mart attempts to draw between *Serembus* and the instant case is a distinction making no difference.

Wal-Mart also argues that the trial court erred by "overlooking the express provisions" of § 803.03, STATS. Section 803.03(2)(b), STATS., in relevant part, provides:

> *Options after joinder.* Any party joined pursuant to par. (a) may 1. participate in the prosecution of the action, 2. agree to have his or her interest represented by the party who caused the joinder, or 3. move for dismissal with or without prejudice. If the party joined chooses to participate in the prosecution of the action, the party joined shall have an equal voice with other claimants in such prosecution. If the party joined chooses to have his or her interest represented by the party who caused the joinder, the party joined shall sign a written waiver of the right to participate which shall express consent to be bound by the judgment in the action. . . . A party who represents the interest of another party and who obtains a judgment favorable to such other party may be awarded reasonable attorneys fees by the court.

Wal-Mart contends: "At no time did the Plan enter an agreement with [Radish] or her attorney on representation. At no time did the Plan consent to a one-third contingency fee arrangement. Instead, the Plan hired its own attorney who participated in this action and incurred attorneys' fees on an hourly basis." Thus, Wal-Mart maintains, under the statute and the supreme court's decision in *Oakley v. Fireman's Fund,* 162 Wis.

2d 821, 470 N.W.2d 882 (1991), it owes Radish nothing for attorneys' fees.

Wal-Mart and Radish debate whether Wal-Mart, in the trial court, conceded that *Oakley* does not control because it is preempted by federal law. We need not resolve that debate because, assuming *Oakley*'s applicability to the instant case, it supports Radish.

*Oakley* focused on "whether an insured is entitled to a pro rata contribution toward his attorney's fees incurred in establishing a third party's liability to him and to his insurer by subrogation *when the insurer participated in the action which established the third party's liability.*" *Id.* at 824, 470 N.W.2d at 883 (emphasis added). In this case, however, we conclude that, under § 803.03(2)(b), STATS., Wal-Mart participated not in what *Oakley* termed "the action which established the third party's liability," but rather, in the action which determined its subrogation recovery.

Mere presence as a party, by virtue of being joined, does not constitute "participat[ion]" under § 803.03(2)(b), STATS. Otherwise, "participat[ion]" would be instant and automatic at the moment of joinder, obviating the need for the statutory reference to what the joined party "may" do. *See* § 803.03(2)(b). Wal-Mart acknowledges that when it was joined in the underlying action, it neither agreed to have its interest represented by Radish nor moved for dismissal, under § 803.03(2)(b), STATS. Wal-Mart maintains, however, that it "participated" in the action, under the first option of the statute. But the statute's first option does not state, "participate in the action." Rather, it states, "participate in *the prosecution of the action.*" Section 803.03(2)(b), STATS. (emphasis added). Wal-Mart did nothing to participate in Radish's prosecution of her action against the defendants.

Thus, assuming the applicability of the statute and *Oakley*, Wal-Mart, having exercised *none* of the three options under § 803.03(2)(b), STATS., simply falls within "the common law rule" acknowledged in *Oakley*: "a subrogated insurance carrier must pay its fair share of attorney's fees and costs if it has . . . notice [of the action] and does nothing to assist *in the prosecution* of the claim." *Id.* at 829 n.6, 470 N.W.2d at 886 n.6 (internal quotation marks and quoted source omitted) (emphasis added). Accordingly, we also conclude that the trial court correctly ordered a one-third reduction for attorneys' fees in Wal-Mart's 1995 subrogation recovery.

*By the Court.*—Judgment affirmed.