Michael F. JOHNSON and Debra J. Thorstad,
Plaintiffs-Appellants,†

v.

Amanda A. ZIEGLER, American Family Mutual Insurance Company, and Progressive Northern Insurance Company, Defendants,

DEC INTERNATIONAL, INC., Defendant-Respondent.

Court of Appeals

*No. 00–3545. Submitted on briefs June 11, 2001.—Decided April 25, 2002.*

2002 WI App 103

(Also reported in 648 N.W.2d 480.)

† Petition to review denied 7-26-02.

751

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert J. Kay* and *Robert A. Mich, Jr.* of *Kay & Andersen, S.C.*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Andrew J. Clarkowski* of *Axley Brynelson, LLP*, Madison.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Michael Johnson and Debra Thorstad appeal a judgment which awarded DEC International, Inc., $92,118.69 on its subrogation claim for medical benefits it paid on Johnson's behalf.[1] DEC administered a self-funded benefit plan under the fed-

---

[1] Thorstad is Johnson's mother and she shared in the settlement Johnson obtained for his personal injuries. We will

eral Employee Retirement Income and Security Act (ERISA). Johnson obtained a $250,000 settlement for personal injuries he sustained in a traffic accident caused by Amanda Ziegler.[2] The circuit court granted DEC's motion for summary judgment, granting DEC the full amount of its subrogation claim, with no reduction or offsets under the "made whole" doctrine or for attorney's fees Johnson incurred in obtaining the settlement. Johnson claims the court erred in so doing. We disagree and affirm.

## BACKGROUND

¶ 2. The parties filed cross-motions for summary judgment and neither asserts that any material facts are in dispute. DEC's ERISA plan document includes the following provisions under a heading entitled "Subrogation":

> *This Plan will be reimbursed for all benefit payments made as the result of Injuries or Illnesses which are caused by the actions of a third party and which give rise to a court ordered financial award or out-of-court settlement to a Covered Individual from a third party tort-feasor, person or entity.* This Plan will provide benefits, otherwise payable under this Plan, to or on behalf of the Covered Individual only on the following terms and conditions:
>
> 1. In the event of any payment under this Plan, the Plan shall be subrogated to all of the Covered

---

[2] Ziegler and her insurer, American Family Mutual Insurance Company, and Progressive Northern Insurance Company, the insurer of Johnson's motorcycle, were defendants in Johnson's lawsuit and thus appear in the caption. None are parties to this appeal, however.

Individual's rights of recovery against any person or organization and the Covered Individual shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Covered Individual shall do nothing after loss to prejudice such rights. The Covered Individual shall agree to cooperate with the Plan and/or any representatives of the Plan in completing such forms and in giving such information surrounding any accident as the Plan or its representatives deem necessary to fully investigate the incident.

2. *The Plan is also granted a right of reimbursement from the proceeds of any settlement, judgment or other payment obtained by the Covered Individual.* This right of reimbursement is cumulative with and not exclusive of the subrogation right granted in 1 above, but only to the extent of the benefits paid by the Plan.

3. The Plan, by payment of any proceeds, is granted a lien on the proceeds of any settlement, judgment or other payment received by the Covered Individual, and the Covered Individual consents to said lien and agrees to take whatever steps are necessary to help the Plan Administrator secure such lien.

4. The subrogation and reimbursement rights and liens apply to any recoveries made by the Covered Individual as a result of the Injuries sustained or Illness suffered, including but not limited to the following:

 a. Payments made directly by the third party tort-feasor or any insurance company on behalf

of the third party tort-feasor or any other payments on behalf of the third party tort-feasor.

. . . . .

6. No Covered Individual shall make any settlement which specifically excludes or attempts to exclude the medical expenses paid by the Plan.

7. *The Plan's right of recovery shall be a prior lien against any proceeds recovered by the Covered Individual, which right shall not be defeated nor reduced by the application of any so-called "Made-Whole Doctrine," "Rimes Doctrine" or any other such doctrine purporting to defeat the Plan's recovery rights by allocating the proceeds exclusively to non-medical expense damages.*

8. *No Covered Individual shall incur any expenses on behalf of the Plan in pursuit of the Plan's rights, specifically, no court costs nor attorney's fees may be deducted from the Plan's recovery without the prior express written consent of the Plan. This right shall not be defeated by any so-called "Fund Doctrine" or "Common Fund Doctrine": or "Attorney's Fund Doctrine."*

(Emphasis added.)

¶ 3. Johnson was seventeen at the time of the accident and turned eighteen about three months later. His settlement with Ziegler's insurer did not itemize amounts for medical expenses or other damages, nor did it allocate damages between Johnson and his mother. Her claim was for care she provided to her son after his discharge from the hospital, for lost wages and for the loss of her son's society and companionship. DEC admitted during discovery that "Johnson's dam-

ages from the collision described in [his] complaint exceed $250,000." DEC paid out $92,118.69 for medical expenses Johnson incurred as a result of the injuries he sustained in the accident. The parties stipulated that $100,000 of the settlement proceeds could be immediately disbursed to Johnson and Thorstad, and that the remaining $150,000 would be held in trust until the subrogation issue was resolved.

¶ 4. Both parties moved for summary judgment. Johnson asked the court to deny DEC's subrogation claim in its entirety under the "made whole" doctrine, or in the alternative, to reduce it by one-third for the attorney's fees Johnson incurred in obtaining the settlement. The circuit court denied Johnson's motion and awarded judgment to DEC for the whole of its claim, plus interest and costs. Johnson appeals.[3]

## ANALYSIS

¶ 5. We review a circuit court's grant or denial of summary judgment de novo, owing no deference to the trial court's decision. *Waters v. United States Fid. & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). Even though our review is de novo, we are aided in this case by the trial court's thoughtful analysis. *See Katzman v. Ethics Bd.*, 228 Wis. 2d 282, 291, 596 N.W.2d 861 (Ct. App. 1999). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d

---

[3] Our consideration and disposition of this appeal was stayed from August 17, 2001 until March 14, 2002, due to DEC's federal bankruptcy filing.

175 (Ct. App. 1995); WIS. STAT. § 802.08(2) (1999–2000).[4] When both parties move for summary judgment and neither argues that factual disputes bar the other's motion, the " 'practical effect is that the facts are stipulated and only issues of law are before us.' " *See Lucas v. Godfrey*, 161 Wis. 2d 51, 57, 467 N.W.2d 180 (Ct. App. 1991) (quoted source omitted).

¶ 6. The first skirmish between the parties is over whether we must defer to the plan administrator's interpretation of the subrogation provisions at issue. DEC maintains that we should, citing *Newport News Shipbuilding Co. v. T.H.E. Insurance Co.*, 187 Wis. 2d 364, 372, 523 N.W.2d 270 (Ct. App. 1994) ("Courts give substantial deference to the interpretation of an ERISA plan by the plan's administrator when the plan vests in the administrator discretion to interpret the plan."). Johnson counters that the DEC plan vests discretion in the administrator only with respect to review and decisions regarding "claims to benefits" under the plan. *See Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan v. Wells*, 213 F.3d 398, 403 (7th Cir. 2000) (declining to defer to an administrator's interpretation of a subrogation provision where "there is no reference to discretion in the part of the plan documents that deals with the plan's right to reimbursement"). We concur with the trial court's observation, however, that the disputed subrogation provisions of the DEC plan are not ambiguous. Our interpretation and result would thus be the same under any standard of review.

---

[4] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 7. The first disputed provision is one which grants to the plan a "prior lien against any proceeds" recovered by Johnson, "which right shall not be defeated nor reduced by the application of any so-called 'Made-Whole Doctrine,' 'Rimes Doctrine' or any other such doctrine purporting to defeat the Plan's recovery rights by allocating the proceeds exclusively to non-medical expense damages."[5] We concluded in *Newport News* that "the right of a[n ERISA] plan beneficiary to be made whole before the plan can recoup its payments 'exists only when the parties are silent.' " *Newport News*, 187 Wis. 2d at 371 (citation omitted). Here, the plan is far from silent on the issue.

¶ 8. The DEC plan language plainly addresses, and disavows, any right on Johnson's part to be made whole prior to the plan's recovery of benefits paid. Johnson asserts, however, that an ambiguity arises from the disjunctive reference to "any other such doctrine purporting to defeat the Plan's recovery rights by allocating the proceeds exclusively to non-medical expense damages." Johnson claims that the provision can be read to "merely bar[] a Covered Individual from allocating a settlement exclusively to non-medical expense damages," a matter also addressed in the preceding paragraph of the plan. Thus, in Johnson's view, the disclaimer of the "made whole" rule is ambiguous and must fail, and the plan is subject to the "default" rule which would render Wisconsin's "made whole" doctrine

---

[5] The "made (or make) whole" doctrine provides that "[s]ubrogation is to be allowed only when the insured is compensated in full by recovery from the tortfeasor. The insured is to be made whole, but no more than whole." *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 272, 316 N.W.2d 348 (1982).

applicable. *See Ninaus v. State Farm Mut. Auto. Ins. Co.*, 220 Wis. 2d 869, 875, 584 N.W.2d 545 (Ct. App. 1998).

¶ 9. We reject Johnson's strained reading of the language at issue. By asserting its priority claim to proceeds recovered by a plan beneficiary, and by expressly disclaiming application of the "Made-Whole Doctrine" and the "Rimes Doctrine," we fail to see how the plan drafter could have more clearly communicated the plan's "first-dollar" subrogation rights. The additional, disjunctive reference to other legal doctrines that might otherwise "defeat the Plan's recovery rights by allocating the proceeds exclusively to non-medical expense damages," takes nothing away from the specific disclaimers of the "made whole" and "Rimes" doctrines. *See Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 638, 586 N.W.2d 863 (1998):

> The word "or," in the phrase "ownership, maintenance or use," is unambiguous. The meaning of "or" is plain: "or" is a connector of alternative choices in a series. In an everyday setting, "or" is interpreted disjunctively. A reasonable person in the insured's position would not think that "or" means "and" . . . .

¶ 10. Johnson also contends that DEC's claim for reimbursement of medical benefits it paid must fail because the settlement received from Ziegler's insurer covered both his and his mother's claims. Johnson points out that his mother was not a DEC plan participant, and thus, the plan's subrogation provisions would not apply to her. According to Johnson, the plan therefore "has no authority to compel [him or his mother] to return any portion of the settlement proceeds to DEC." We agree with DEC, however, that the plan's provision that it has "a right of reimbursement from the proceeds

of *any settlement,* judgment or other payment *obtained by the Covered Individual"* (emphasis added), is sufficient to reach Johnson's interest in any joint or aggregate settlement.

¶ 11. Thus, unless it appears that the plan's recovery of some $92,000 from the settlement would exceed Johnson's share of the proceeds, the fact that Thorstad may also have something coming from the joint settlement cannot defeat DEC's recovery. The trial court said in its decision that "[i]t seems obvious to this court that Ms. Thorstad cannot logically claim a right to more than 50% of this settlement." Johnson is critical of the court's conclusion, asserting that it was error for the court to make a finding on the amount of Thorstad's damages, that issue being a matter for a jury to determine. We disagree that the court made a factual finding regarding the amount of damages to which Thorstad was entitled. Rather, based on the summary judgment submissions, the trial court concluded, as do we, that no reasonable jury could reasonably find that Thorstad's damages exceeded Johnson's or approached $160,000.

¶ 12. Johnson suffered "multiple pelvic fractures" in the accident and was hospitalized for over three weeks, undergoing three surgeries. He was confined to a wheelchair for several more weeks, and used crutches for six additional weeks. His medical expenses exceeded $90,000. Thorstad's claim was based on the extensive care she provided Johnson for about four weeks after his release from the hospital, and some lesser assistance she provided him for the additional six weeks he remained on crutches. She also notes in her affidavit that she missed about two months of work during this period, but she does not disclose the amount of wages lost, nor does she explain why she should be compen-

sated both for the services she provided to her son and for her opportunity costs in doing so. Finally, Thorstad avers that she believed she had a claim for the loss of Johnson's society and companionship "during his recovery." This latter element of damages could not encompass any period following Johnson's eighteenth birthday, however, which occurred about eleven weeks after his accident. *See Wells Estate v. Mt. Sinai Med. Ctr.*, 183 Wis. 2d 667, 677, 515 N.W.2d 705 (1994).

¶ 13. In short, we have no difficulty concluding that, based on the undisputed facts contained in the summary judgment record, DEC's recovery of some $92,000 in medical benefits it paid on Johnson's behalf will not invade Thorstad's share of the settlement proceeds. Put another way, we conclude that Johnson has not produced sufficient evidence on summary judgment to place at issue whether Thorstad's damages exceeded his own, or the possibility that Thorstad could establish damages approaching $160,000. *See Transportation Ins. Co., Inc. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 291–92, 507 N.W.2d 136 (Ct. App. 1993) ("[I]t is the burden of the party asserting a claim on which it bears the burden of proof at trial 'to make a showing sufficient to establish the existence of an element essential to that party's case.' " (citation omitted)). Therefore, Thorstad's claim to some part of the settlement proceeds does not defeat DEC's subrogation claim.

¶ 14. Finally, we address what is arguably the most troubling aspect of the appealed judgment—the fact that the judgment permits DEC to recover its entire subrogation claim with no reduction or offset for the attorney's fees Johnson incurred in procuring his settlement. Johnson's counsel averred, and DEC does

not dispute, that DEC "did not appear at any of the depositions in this case and did not assist my firm in obtaining the $250,000 settlement from Amanda Ziegler and American Family Mutual Insurance Company."

¶ 15. We concluded in *Ninaus* that where an ERISA plan's only participation in a personal injury suit was to assert its subrogation claim against the plaintiff, the plan had a common law obligation to " 'pay its fair share of attorney's fees and costs.' " *Ninaus*, 220 Wis. 2d at 888. As DEC points out, however, the plan at issue in *Ninaus* had no provision similar to the one in DEC's plan disavowing any deduction for attorney's fees without DEC's "prior express written consent." We specifically noted in *Ninaus* that the plaintiff had made no claim for an attorney's fees reduction on benefits recovered for a different year, one in which plan language expressly provided "that there shall be no offset for the insured's attorneys' fees in procuring a settlement or award." *Id.* at 884 n.5. *Ninaus* is thus of no assistance to Johnson on the present facts.

¶ 16. The federal precedents on which Johnson seeks to rely also apply the "common fund" doctrine as a default rule, under which a plan's recovery is reduced by a pro rata share of the beneficiary's attorney's fees when the plan is silent on the matter. For example, in *Wells*, 213 F.3d 398, the court concluded that a subrogation provision calling for "reimbursement of 100 percent of any benefits paid to a participant," *id.* at 400, but which did not disclaim or disavow reductions for recovery costs, was subject to the "common fund" doctrine:

> To read the Wal-Mart plan literally would allow the plan to free ride on the efforts of the plan participant's attorney, contrary to the equitable concept of "common fund" that governs the allocation of attorney's fees in

cases in which the lawyer hired by one party creates through his efforts a fund in which others are entitled to share as well.

*Id.* at 402. The court expressly left open, however, the question of whether express plan language could override application of state or federal "common fund" doctrines. *Id.* at 403–04; *see also Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 496 (7th Cir. 1997).

¶ 17. The state of federal case law regarding the application of the "common fund" doctrine to ERISA subrogation claims is surveyed and analyzed in a recent law review comment: *"ERISA Qualified Subrogation Liens: Should They be Reduced to Reflect a Pro Rata Share of Attorney Fees?"* 104 DICK. L. REV. 359 (2000). The author of the comment concludes:

> As the law stands now, however, a company or corporation that drafts subrogation language that clearly states the plan's entitlement to 100% reimbursement will not be required to pay a pro rata share of attorneys' fees when a beneficiary pursues a third party. Courts that reduced subrogation liens to reflect a pro rata share of attorneys' fees did so with plans that had ambiguous subrogation language or no subrogation language at all.

*Id.* at 376. *See, e.g., Ryan v. Federal Express Corp.*, 78 F.3d 123, 127 (3rd Cir. 1996) (reversing district court's reduction of subrogation recovery by pro rata share of attorney's fees where the "language of the subrogation provision at issue . . . unambiguously requires [the beneficiaries] to pay back all the money they received from the Plan"; concluding " '[e]nrichment is not 'unjust' where it is allowed by the express terms of the . . . plan' " (citation omitted)).

¶ 18. Johnson does not contend that the language of DEC's plan precluding reductions for attorney's fees from the plan's recovery of benefits is ambiguous. We conclude that permitting this express provision to override the "common fund" doctrine comports with our treatment of provisions which expressly override the "made whole" doctrine. Although we admittedly did not directly address the issue in *Ninaus*, honoring "common fund" opt-out provisions is also arguably consistent with our decision in that case, and with what appears to be the current state of the law in the federal courts. Accordingly, we affirm the award to DEC of its full claim, unreduced by Johnson's costs in obtaining his settlement.

¶ 19. Johnson asserts that this result is "inequitable and unconscionable." It may be the former, as the discussions by the Seventh Circuit in *Wells* and *Blackburn* suggest. But, like the author of the law review comment cited above, we conclude that if parties to an ERISA plan are to be precluded from opting out of the "common fund" doctrine because such provisions are inconsistent with ERISA's purpose,[6] such a rule must come from the Congress or the Supreme Court. *See* 104 DICK. L. REV. at 377.

## CONCLUSION

¶ 20. For the reasons discussed above, we affirm the appealed judgment.[7]

---

[6] One purpose of ERISA is to "protect . . . the interests of participants in employee benefit plans . . . ." 29 U.S.C. § 1001(b).

[7] Johnson also requests that we direct the trial court to reconsider whether it should award him reasonable attorney's fees and costs under 29 U.S.C. § 1132(g)(1). Johnson has not

*By the Court.*—Judgment affirmed.

succeeded in setting aside any part of the appealed judgment, however, and thus he has not become a prevailing party on any issue. Moreover, DEC has not cross-appealed the trial court's denial of its request for fees and costs under § 1132. Accordingly, there is no need for us to remand on this issue or to address it further.