Judy PALMERTON and Russell Palmerton,
Plaintiffs-Appellants,†

v.

ASSOCIATES' HEALTH AND WELFARE PLAN, Defendant-
Respondent.

Court of Appeals

*No. 02–1741. Submitted on briefs December 17, 2002.—Decided
January 14, 2003.*

2003 WI App 41

(Also reported in 659 N.W.2d 183.)

† Petition to review denied 4-22-03.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *C.M. Bye,* of *Bye, Goff & Rohde, Ltd.* of River Falls.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Amy J. Boettcher,* of *Nash, Podvin, Tuchscherer, Huttenburg, Weymouth & Kryshak, S.C.* of Wisconsin Rapids, and *Thomas H. Lawrence* and *John M. Russell* of *Lawrence & Russell, LLP* of Memphis, Tennessee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Judy and Russell Palmerton appeal a judgment awarding Associates' Health and Welfare Plan $35,683.29 on its subrogation claim for medical expenses paid on Judy's behalf. The Plan is a self-funded benefit plan for Wal-Mart employees under the Employee Retirement Income Security Act (ERISA). The Plan paid Judy's medical expenses arising from an automobile accident. The Palmertons sued the tortfeasor and joined the Plan as a defendant. The Palmertons sought to dismiss the Plan and extinguish its subrogation claim because it failed to answer the complaint. The court granted the Palmertons' motion to dismiss, but did not extinguish the Plan's subrogation claim because the Palmertons did not request this relief in their complaint. The Palmertons then claimed the Plan's subrogation claim was subject to the made whole and common fund doctrines. The court disagreed and awarded the Plan its subrogation claim.

¶ 2. On appeal, the Palmertons argue that the trial court should have extinguished the Plan's subrogation claim because it did not file a timely response to the complaint. In addition, they claim the court should have limited the Plan's recovery based on the made whole and common fund doctrines. We reject both of these arguments and affirm the trial court's judgment.

## BACKGROUND

¶ 3. The facts are undisputed. In August 1998, Judy Palmerton was injured in an automobile accident. At the time, she was a participant in the Wal-Mart Stores, Inc., Associates' Health and Welfare Plan. The Plan paid $35,683.29 for Judy's medical expenses related to the accident. The Plan's summary plan descrip-

tion contains a subrogation clause, which among other things gives the Plan the right to recover regardless of whether the participant has been made whole and makes the participant solely responsible for attorney fees.[1]

## [1] RIGHT TO REDUCTION AND REIMBURSEMENT (SUBROGATION)

The Plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and 2) recover or subrogate 100% of the benefits paid or to be paid by the Plan on your behalf and/or your dependents to the extent of any and all of the following payments:

- Any judgment, settlement, or any payment made or to be made, relating to the accident, including, but not limited to other insurance.

- Any auto or recreational vehicle insurance coverages or benefits including, but not limited to, uninsured/underinsured motorist coverage.

- Business and homeowners medical liability insurance coverage or payments.

- Attorney's fees.

**Cooperation Required**

The Plan requires that you or your covered dependent cooperate to guarantee reimbursement to the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due you or your dependents under the Plan Document. You or your covered dependents may not do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.

**NOTE:** All attorney's fees and court costs are the responsibility of the participant, not the Plan.

These rights apply regardless of whether such payments are designated as payments for, but not limited to:

- Pain and suffering

- Medical benefits

183

¶ 4. In August 1998, the Palmertons signed a Reimbursement-Subrogation Agreement with the Plan.

- Other specified damages

- Whether the participant has been made whole (i.e., fully compensated for his/her injuries)

Additionally, the Plan has the right to file suit on your behalf for the condition giving rise to the medical expenses to recover benefits paid or to be paid by the Plan.

**NOTES:**

- If you reside in a state where personal injury protection or medical payment coverage (as offered under your automobile/homeowner's policy) is mandatory, the Plan takes secondary status. The Plan will reduce benefits for an amount equal to, but not less than, that state's mandatory minimum personal injury protection or medical payment requirement.

- The Plan has first priority with respect to its right to reduction and reimbursement (subrogation).

- The Plan is secondary to any Excess insurance policy, including but not limited to school and/or athletic policies.

- The Plan has the right to reduce future benefits.

- The Plan will not pay for future medical charges related to the accident until medical charges have exceeded all amounts that were recovered, that should have been recovered, or are to be recovered by or on behalf of the participant.

- The Plan's section regarding the right to Reduction and Reimbursement (Subrogation) applies to the associate and to covered dependents.

- The Plan has the right to recover interest on the amount paid out by the Plan relating to the accident.

- The Plan has the right to recover the amount paid out relating to the accident in a lump sum.

- The Plan does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant.

The agreement required them to repay "the Plan 100% at the time settlement/judgment is received by the Participant." The agreement also said "all attorney's fees are the responsibility of the Participant."

¶ 5. The Palmertons filed suit against the tortfeasor on June 29, 2000. They joined the Plan as a defendant. In their complaint, they alleged the Plan "paid health care expenses and claims to be subrogated to plaintiff's rights for health care payments." The Plan was served on July 11 and a Plan representative signed an admission of service form. On September 15, the Palmertons filed an amended complaint. The Plan's counsel signed an admission of service form on October 3.

¶ 6. The Plan did not answer either complaint, but rather filed a motion to dismiss pursuant to WIS.

---

- Modification to this section regarding the right to reduction and reimbursement (subrogation) are made to clarify previous Plan wording.

**Participant's Responsibility Regarding Right of Reduction and/or Recovery**

To aid the Plan in its enforcement of its right of reduction, recovery, reimbursements, and subrogation, the participant must, at the Plan's request and at its discretion:

- Take any action

- Give information

- Execute documents so required by the Plan.

Failure to aid the Plan and to comply with such requests may result in the Plan withholding benefits, services, payments, or credits due under the plan.

Subrogation is when the Plan pays your medical charges relating to your accident while waiting for the responsible party to settle. Repayment to the Plan of 100% will be made at the time the settlement is received by the associate, dependent, or their attorney.

Stat. § 803.03[2] on November 6. It said it intended to pursue its claim against the tortfeasor in federal court and should therefore be dismissed. The Plan brought the federal action against Judy, seeking to enforce its subrogation claim. In February 2001, the Palmertons moved to dismiss the Plan with prejudice in state court for failing to answer the complaint. In April, the federal court dismissed the Plan's suit, saying it should be resolved as part of the state court proceeding. In July, the trial court granted the Palmertons' motion to dismiss, but held the dismissal did not bar the Plan's subrogation claim because the Palmertons never sought to foreclose the Plan's right of recovery.

¶ 7. The Palmertons settled with the tortfeasor for $101,000, approximately $50,000 less than the cost of their total damages. After settlement, the Palmertons asked the court to dismiss the Plan's subrogation claim. They argued that it was barred by the made whole doctrine and, in the alternative, any recovery by the Plan should be reduced by one-third to reflect its share of the attorney fees under the common fund doctrine. The court rejected these arguments and awarded the Plan $35,683.29. The Palmertons appeal.

## DISCUSSION

¶ 8. The Palmertons first argue that the trial court erred by not entering a default judgment against the Plan. They contend the Plan failed to answer the complaint within forty-five days as required by Wis. Stat. § 802.06(1), and therefore the court should have dismissed the Plan with prejudice. The court dismissed the Plan, but did not extinguish its subrogation rights.

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 9. The trial court's determination in granting a default judgment is reviewed under the erroneous exercise of discretion standard. *See Oostburg State Bank v. United S&L Ass'n*, 125 Wis. 2d 224, 238, 372 N.W.2d 471 (Ct. App. 1985), *aff'd*, 130 Wis. 2d 4, 386 N.W.2d 53 (1986). Our review is limited to whether the trial court examined the relevant facts, applied a proper legal standard, and reached a reasonable conclusion. *Doersching v. Funeral Dirs. & Embalmers Exam. Bd.*, 138 Wis. 2d 312, 328, 405 N.W.2d 781 (Ct. App. 1987). A court may not enter default judgment under WIS. STAT. § 806.02(1)-(4) if the defendant has joined issue. Further, if a default judgment is entered, the court may not grant relief beyond that demanded in the complaint. *Klaus v. Vander Heyden*, 106 Wis. 2d 353, 359, 316 N.W.2d 664 (1982).

¶ 10. The dispositive issue we need to resolve is whether the trial court erred by not extinguishing the Plan's subrogation claim because the Palmertons failed to request the court to do so in their complaint. We construe the trial court's dismissal order as accepting the Palmertons' argument that the Plan failed to respond to the complaint. For the purposes of this appeal, it does not matter whether the Plan was dismissed, only that the court did not extinguish its subrogation claim. Because of the court's ruling, the Plan was free to enforce its subrogation rights in another action. Further, the Palmertons essentially rejoined the Plan when they asked the court to resolve the subrogation claim after the Plan had already been dismissed. Consequently, we will assume, without deciding, that the Plan had not responded to the complaint when the court granted the Palmertons' motion.

187

¶ 11. The issue then is the propriety of the court's refusal to dismiss the Plan with prejudice. The court declined to extinguish the Plan's subrogation claim because the Palmertons had not requested this in their complaint. As noted, a court may only order the relief requested when granting a default judgment. *Id.* The Palmertons claim their complaint asked the court to extinguish the Plan's subrogation right. We disagree. The complaint alleges the Plan "paid health care expenses and claims to be subrogated to Plaintiffs' rights for health care payments." The Palmertons correctly note that Wisconsin has a notice pleading statute, and a pleading need only "notify the opposing party of the pleader's position in the case." *See Norwest Bank Wis. Eau Claire v. Plourde*, 185 Wis. 2d 377, 388, 518 N.W.2d 265 (Ct. App. 1994). We cannot say, however, that the subrogation allegation, along with the Palmertons' general request for "damages in accordance with the allegations of the complaint" constitutes a request to extinguish the Plan's subrogation rights. The court properly refused to dismiss the subrogation claim with prejudice.

¶ 12. Next, the Palmertons contend the Plan's subrogation claim is subject to the made whole and common fund doctrines. Under the made whole doctrine, a subrogated insurer is barred from recovering unless the insured is made whole. *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 272, 316 N.W.2d 348 (1982). It is undisputed that the Palmertons have not been made whole. However, subrogation provisions of self-funded ERISA plans trump state subrogation rules. *Newport News Shipbuilding Co. v. T.H.E. Ins. Co.*, 187 Wis. 2d 364, 371, 523 N.W.2d 270 (Ct. App. 1994). Any application of the made whole doctrine must

be found in the federal common law. *Id.* Under the federal common law, the made whole doctrine only applies when the parties are silent. *Id.*

¶ 13. Here, the parties have disclaimed the made whole doctrine. The summary plan description allows the Plan to recover 100% of the benefits it pays regardless of "whether the participant has been made whole (i.e. fully compensated for his/her injuries)." This language disclaims the application of the made whole doctrine and it therefore does not apply.

¶ 14. In addition, we conclude that the common fund doctrine does not apply to this case. Normally, where an ERISA plan's only participation in a personal injury suit was to assert its subrogation claim, as it was here, the plan has a common law obligation to pay its fair share of attorney fees and costs. *See Ninaus v. State Farm Mut. Auto. Ins. Co.*, 220 Wis. 2d 869, 888, 584 N.W.2d 545 (Ct. App. 1998). However, we recently held the parties to an ERISA plan could disclaim the common fund doctrine as well as the made whole doctrine. *Johnson v. Ziegler*, 2002 WI App 103, ¶ 18, 255 Wis. 2d 751, 648 N.W.2d 480. In *Johnson*, we determined that allowing parties to disclaim the common fund doctrine in ERISA plans was consistent with our treatment of the made whole doctrine as well as with the current state of federal law. *Id.*

¶ 15. Here, the summary plan description reads "the Plan does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant." Further, the parties' Reimbursement-Subrogation Agreement states, "all

189

attorney's fees are the responsibility of the participant."[3] We conclude that this language disavows the common fund doctrine.

¶ 16. The Palmertons point to *Wal-Mart Stores v. Wells*, 213 F.3d 398 (7th Cir. 2000), to support their claim the common fund doctrine applies. We are not persuaded. *Wells* involved an earlier version of the plan at issue here that did not address attorney fees. *Id.* at 403. There, the court determined that version of the plan did not disavow the common fund doctrine and required the insurer to pay its share of the attorney fees. *Id.* The court noted a 1996 amendment to the plan "explicitly refuses to pick up any part of the plan participant's attorneys' fees." *Id.* While the court left open the question whether this language could serve as a waiver, we are satisfied that our decision in *Johnson*, where we considered *Wells*, forecloses any question that ERISA parties may preclude the application of the common fund doctrine through the plan's language. *Johnson*, 2002 WI App 103 at ¶ 16.

¶ 17. Finally, we reject the Palmertons' claim that the United States Supreme Court's recent decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), allows the application of the common fund and made whole doctrines to ERISA subrogation claims. In *Great-West*, the court held ERISA fiduciaries suing under 29 U.S.C. § 1132(a)(3) are limited to pursuing equitable remedies only. *Id.* at 221. Thus, the Palmertons argue, the Plan is limited here to equitable

---

[3] In their reply brief, the Palmertons claim this agreement is unenforceable because it lacks consideration and is a product of duress. We do not consider this argument because it is raised for the first time in their reply brief. *Northwest Wholesale Lumber v. Anderson*, 191 Wis. 2d 278, 294 n.11, 528 N.W.2d 502 (Ct. App. 1995).

claims to which equitable defenses, such as the made whole and common fund doctrines, must be allowed.

¶ 18. We disagree. *Great-West* addresses ERISA plans seeking reimbursement under federal law. Here, the Plan is asserting its subrogation rights under state law. These are two different types of actions. *See Unisys Med. Plan v. Timm*, 98 F. 3d 971, 973 (7th Cir. 1996).[4] Further, even if *Great-West* applied to ERISA subrogation, the relevant equitable remedies would be those found in the federal common law, which allows ERISA parties to disclaim the made whole and common fund doctrines. *See Great-West*, 534 U.S. at 221.

*By the Court.*—Judgment affirmed.

---

■■■■■■

---

[4] For similar reasons, we reject the Palmertons' claim that the Plan lacks standing to assert its reimbursement claim under ERISA. Instead, the Palmertons claim, only ERISA plan administrators can bring reimbursement claims. While this is undoubtedly true, the issue before us is a subrogation claim, not an ERISA reimbursement.